```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


CX Reinsurance Company         *
Limited, f/k/a CNA             *
Reinsurance Company Limited    *   Civil Action No. WMN-14-180
                               *
v.                             *
                               *
Camden Management Services,    *
LLC, et al.                    *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Before the Court is CX Reinsurance's Motion for Judgment on the Pleadings. ECF No. 34. Defendants have failed to respond within the time allowed by the Rules and as such the motion is ripe for review. Upon a review of the papers, facts, and applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and the motion will be granted.

In 2012, Carolyn Russell filed suit in the Baltimore City Circuit Court (Underlying Suit) on behalf of her children Hakil, Rakeen, and Tanaya Hamilton (collectively "The Hamiltons") to recover for lead-based injuries incurred during their time as tenants in various rental properties in Baltimore. The suit was brought against the owners of 17 North Port Street, 2022 Jefferson Street, and 401 North Ellwood Avenue, along with the management company for 17 North Port Street, Camden Management (Camden), and its employee, Kathy Smith (Ms. Smith). In relevant part, the complaint alleges that exposure to the

conditions for 17 North Port Street occurred from 1991-1998 for Tanaya Hamilton, 1992-1998 for Hakil Hamilton, and 1996-2002 for Rakeen Hamilton.

CX-Reinsurance (CX-Re) is the insurer for Camden and Ms. Smith.  CX-Re brings suit requesting a declaratory judgment that it has no duty to defend or indemnify Camden and Ms. Smith in the Underlying Suit in state court.  Camden, Ms. Smith, and the defendant property owners have not filed a response of any kind in this matter.  The Hamiltons filed an Answer that contested CX-Re's legal conclusions but failed to address the factual allegations as required by Fed. R. Civ. P. 8(b)(1)(B).  ECF No. 8. On May 23, 2014, CX-Re moved for Clerk's Entry of Default as to all Defendants.  ECF Nos. 21-25.  Default was granted against all Defendants, including the Hamiltons.  ECF Nos. 26-30.  Upon direction of the Court, CX-Re then filed this motion for judgment on the pleadings.  In reviewing the motion, the Court noted that the property in question – 17 North Port – was not identified in the policy submitted for the Court's review.  ECF No. 35.  CX-Re satisfactorily provided confirmation of 17 North Port's coverage under the policy by affidavit supported by documentation.  ECF No. 37.

Fed. R. Civ. P. 12(c) allows a party to move for judgment on the pleadings "after the pleadings are closed, but early enough not to delay trial."  The standard for a Rule 12(c)

2

motion on the pleadings is identical to the standard for summary judgment motions when the moving party seeks affirmative relief on the basis of the pleadings and not merely a dismissal of claims brought against it.  Geoghegan v. Grant, 2011 WL 673779, *3 (D. Md. Feb. 17, 2011).  Because the Court's inquiry is directed towards a final judgment on the merits, the Court will only grant a judgment on the pleadings if "there is no genuine dispute of material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  This action is particularly appropriate for review under a 12(c) motion, as "motions on the pleadings can be used to obtain declaratory judgments where the parties' only dispute is the proper interpretation of contractual terms."  Geoghegan, 2011 WL 673779 at *3.  Because the defendants have failed to deny the allegations in CX-Re's complaint, they shall be accepted as true.  Fed. R. Civ. P. 8(b)(6).  These facts and all reasonable inferences will be drawn in the non-moving party's favor.  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Finally, CX-Re included in its motion copies of the underlying complaint and the relevant insurance policy.  ECF Nos. 34-2, 34-3.  The Court will include these documents in its consideration.  Although extrinsic evidence is not usually considered in a 12(c) motion, a court may consider the evidence "if it was integral to

and explicitly relied on in the complaint." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (internal quotations omitted).

At issue is whether CX-Re is obligated to defend Camden and Ms. Smith against the Hamiltons' claims in the pending action in Baltimore City Circuit Court. In determining whether CX-Re has a duty to defend, the Court analyzes "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations of the tort action potentially bring the tort claim within the policy's coverage?" St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282, 285 (Md. 1981). Here, the Court narrows its focus to the relevant portions of the insurance policy establishing coverage for tort actions against the insured and the particular exceptions for lead paint injuries.

The insurance agreement between CX-Re, Camden, and Smith provides broad coverage to defend suits and pay damages for "bodily injury" that "is caused by an occurrence that takes place in the 'coverage territory' and . . . occurs during the policy period." ECF No. 34-3 at 12. The policy then outlines a coverage limitation for lead contamination injuries, proscribing the insurance as not applying to "'bodily injury' . . . arising out of the ingestion, inhalation, absorption of, or exposure to lead, lead-paint, or other lead-based products of any kind, form

or nature whatsoever." Id. at 7.  The policy finally articulates an exception to the ban on lead-related coverage for the defense of lead-injury suits if the "occurrence" that caused the injury "is not before the beginning of the Policy Period" and if the elevated lead level "is first diagnosed by a State licensed physician . . . during the policy period." Id. at 8.  Combining these sections, it is apparent that the CX-Re policy will cover lead paint injuries when the elevated lead level occurs during the policy period and is diagnosed by a doctor.  CX-Re styles this qualified coverage as "an exemption to an exclusion."

In regards to whether the scope of this exemption to an exclusion applies to the Underlying Suit, CX-Re argues that defendants have failed to carry their burden and to demonstrate that the Hamiltons' claim falls within that exemption.  There is a three-part burden-shifting scheme employed when determining whether an action is covered within the scope of the insurance policy.  First, the insured must demonstrate that the claim is covered under the policy's insuring agreement. Alpha Const. & Eng'g Corp. v. The Ins. Co. of the State of Penn., 402 Fed. App'x 818, 831 (4th Cir. 2010).  Then, the insurance company must show that the policy excludes coverage for the loss. ACE Am. Ins. Co. v. Ascend One Corp., 570 F. Supp. 2d 789, 798 (D. Md. 2008).  Finally, if the insurance company has demonstrated

that the action is excluded, then the burden shifts to the insured to prove the applicability of the exception to exclusion. Bao v. Liberty Mut. Fire Ins. Co., 535 F. Supp. 2d 532, 535 (D. Md. 2008).

CX-Re has conceded the first step, that the underlying action in this case is covered broadly under the policy since the action is a "suit" seeking damages for "bodily injury" that allegedly took place "within the coverage territory." ECF No. 34-1 at 11. CX-Re then points to the lead policy as excluding the claim from this broad coverage, and argues that the only way for the claim to continue under coverage is for defendants to demonstrate that the claims arose from poisoning first diagnosed during the policy period. CX-Re argues that defendants have failed to provide information pertinent to the exemption to the exclusion and the Court agrees.

The injuries alleged by Tanaya and Hakil Hamilton fall outside of the scope of coverage because their time of exposure to the dangerous conditions began and ended before the CX-Re policy even began. The coverage for actions arising from lead paint injuries applies only if the "occurrence" is not before the beginning of the Policy Period shown. ECF No. 34-3 at 8. An "occurrence" is an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Id. at 23. A plain reading of these provisions would indicate

that the policy is not meant to cover occurrences where the continuous or repeated exposure ended before the policy period. The policy at issue covered 1999 through 2000.  The state court complaint alleges that the exposure occurred when Tanaya and Hakil resided at 17 North Port St. between 1992 and 1998.  The injury-causing exposure ended before the policy even took effect.  As such, being exposed to lead from 1992-1998 constitutes a prior occurrence not eligible for covered under a 1999-2000 policy.

In their reply to the amended complaint, the Hamiltons rely on Maryland Cas. Co. v. Hanson, 902 A.2d 152 (Md. 2006) to support the contention that "each elevated (blood level) indicates a bodily injury" thus requiring CX-Re to defend Camden and Ms. Smith.  This argument ignores, however, that in Hanson, the injuries were incurred while residing at a lead-contaminated property and the dates of coverage under the policies were synchronous.  Here, Defendants have not provided any evidence of a history of CX-Re insuring Camden and Ms. Smith during the time that they were exposed to lead at 17 North Port St.

The injuries sustained by Rakeen do fall within the policy period, while he lived at 17 North Port St. between 1996 and 2002.  Neither the Underlying Action nor the responsive answer, however, suggest that there is a documented instance during the policy period of an elevated blood level of more than ten

7

micrograms of lead per deciliter.  In order for the exemption to the lead policy exclusion to apply, the occurrence has to be during the policy period and the bodily injury must be of a specific type.  A qualifying "bodily injury" is a "lead level in blood, bone, or body tissue in excess of the 'safe level' [and] is first diagnosed by a State licensed physician."  ECF 34-3 at 8.  The 'safe level' is defined as ten micrograms of lead or less present in the blood.  There is nothing to support a conclusion that any measurements of Rakeen's blood were taken by a licensed physician during the policy period, or that there were measurements in excess of ten micrograms.

Since there are no disputed facts and Plaintiff is entitled to judgment as a matter of law, the Court grants Plaintiff's Motion for Judgment on the Pleadings.  A separate order will follow.


                                _____/s/_____
                                William M. Nickerson
                                Senior United States District Judge